RAYMOND v. KEYSTONE LANTERN CO. et al.

(Circuit Court, E. D. Pennsylvania. August 27, 1904.)

No. 28.

1. PATENTS—INFRINGEMENT—LANTERNS.
    The Wright patent, No. 476,506, for an improvement in lanterns having a wick-raising device, construed, and *held* not infringed.

In Equity. On final hearing.

Hector T. Fenton, Francis T. Chambers, and Otto R. Barnett, for complainant.
Chas. B. Collier, for Keystone Lantern Co.
Frederick G. Dussoulas, for John T. Casey.

HOLLAND, District Judge. This is a bill in equity to enjoin the infringement of letters patent No. 476,506, granted June 7, 1892, to Frederick K. Wright, for improvements in lanterns provided with means of raising the wick by rotating the oil pot. The bill also prays for an injunction and an accounting for past infringements. This patent was assigned to complainant as trustee, who holds the legal title sued on. The defense is: (1) Insufficiency of parties complainant; (2) noninfringement; (3) invalidity of the patent sued on for want of patentable novelty.

The first and third matters of defense will not be considered, because, as I view the case, the important point is the question of infringement, allowing it to be a valid patent; and the evidence and exhibits convince me that the defendants do not infringe the complainant's invention. The invention of the patent in suit relates to a class of lanterns previously known, and is a new and useful improve-

ment in wick-raiser attachment 'for these lanterns. The patentee states in his description that:

"Heretofore the bottom of the lantern was rigidly secured to the body thereof, and the oil pot was secured to the bottom by spring catches, so that the oil pot carrying the wick-raising shaft could be turned in the bottom and also be detached therefrom. This construction is objectionable, because the oil pot frequently becomes detached owing to the weakening of the spring catches. The object of my invention is to overcome this difficulty, and to combine the desirable features of a rotatable oil pot provided with a wick-raiser attachment and a lantern bottom which is detachably secured to the bottom by a reliable lock." ·

The combination or embodiment of Wright's invention is thus described in complainant's brief:

"In Figure 4, E indicates a sheet-metal lantern base provided with a hori· zontal flange, $i^2$, and with an upright annular flange, e. The lower end of the body hoop, A, of the lantern, fits within this upright flange, e, and is fastened thereto by a bayonet joint and a spring clip or lock, H, which constitutes a very familiar means for fastening a lantern to its base. When the parts are so assembled, the pins, g, which are secured to the body hoop, A, of the lantern, project through horizontal slots in the upright flange, e, upon the base of the lantern, and are firmly locked in that position. In order to release the pins, h, and permit the manipulation of the parts so as to detach the lantern base from the lantern body, the clip, H, must be sprung outward against its own tension until it disengages the pin, g. It will thus be seen that the base of the lantern and the lantern body hoop are firmly, but removably, locked together, so that no swinging of the lantern and no accidental blows will serve to disengage the lantern base from the body hoop. This, per se, was old long prior to Wright's invention. In Figure 2 of the patent it will be seen that the oil pot, I, is provided on its outer surface with two projections or beads i, $i^1$, which extend, parallel with each other, entirely around the oil pot, thereby· providing a groove between them. The horizontal flange, $i^2$, upon lantern base, e, projects within this groove, and snugly engages the outer surface of the oil pot, I. It will thus be seen that the oil pot, I, is in fact journaled within the horizontal flange, $i^2$, so that the oil pot, I, may be freely rotated, the flange, $i^2$, forming the bearing within which the oil pot rotates. At the same time, by virtue of the permanent beads or ribs, i, $i^1$, formed on the oil pot, and extending above and below the horizontal flange, $i^2$, respectively, the oil pot is permanently mounted within the lantern base, e, so that it is rotatable within the lantern base, but is not detachable therefrom."

The claims in this patent which are said to be infringed are two, as follows:

"(1) The combination, with a lantern frame and a detachable bottom secured to the lantern frame by a releasable fastening, of an oil-pot permanently attached to said bottom, and capable of rotative movement therein, a burner provided with a laterally projecting wick-raiser shaft, and a stop arm attached to the lantern frame, and adopted to come in contact with the button of the wick-raiser shaft, substantially as set forth.

"(2) The combination, with the lantern frame and a detachable bottom secured to the lantern frame by a releasable fastening, of an oil pot capable of rotative movement therein, and provided with beads or projections above and below the said bottom, a burner provided with a laterally projecting wick-raiser shaft, and a stop arm attached to the lantern frame, and adapted to come in contact with the button of the wick-raiser shaft, substantially as set forth."

"Defendants' lantern is a railroad lantern, like that which is shown in the Wright patent, and consists, generally speaking. of a bottom or base, an oil pot mounted on the bottom, a frame to which the bottom or base is detachably connected, and which comprises a bottom ring or body hoop, a wire basket rising from the same, and a movable top or dome attached to the top ring of the wire basket. The oil pot is arranged and connected with the removable

bottom in such a way that the oil pot can be rotated in the bottom. The bottom itself is provided on its upper side with an upwardly projecting collar, which is arranged concentrically with the oil pot, and which, when applied to the body hoop of the lantern frame, surrounds this hoop. The releasable fastening by which this bottom is attached to the body hoop is a stud and slot fastening in all respects like that which is shown in the Wright patent in suit, and described in that patent as the preferred form of fastening for that purpose. The oil pot is surrounded above the bottom by a shell which is secured rigidly at its lower end in the opening of the bottom in which the oil pot is rotatively arranged. This shell is provided with an annular top, which extends inwardly from the shell over the top of the oil pot, and which has a central opening, in which the burner is arranged. Part of the burner is arranged above the top of this shell, and this part of the burner carries the wick-raiser shaft. The annular top of this shell is provided with a circular gear face or annular set of teeth with which the toothed button on the wick-raiser shaft engages, so that upon turning the oil pot the keel or button on the wick-raiser shaft rolls on this annular gear face, and is thereby turned in one or the other direction according to the direction in which the oil pot is turned. The wick-raiser shaft can be rotated in this manner by turning the oil pot, and the wick is thereby raised or lowered. The annular gear face is formed on this annular top of the shell in defendants' lantern by indenting the sheet metal of which the top is formed. The oil pot is arranged in the central opening of the bottom so as to fit snugly in the same, and is held against vertical displacement by annular bulges which surround the oil pot above the opening in the bottom (and by an annular groove in the oil pot at the top in which the shell snugly fits). The lower end of the shell, which is affixed to the bottom, as I have stated, and which surrounds the oil pot, is secured in the same opening. The burner is secured in the top of the oil pot by the usual screw connection consisting of a screw-threaded collar secured in the top of the oil pot and a screw-threaded neck formed on the burner. The threaded collar of the oil pot is arranged with its upper portion within the central opening formed in the overhanging top of the shell in which the annular gear face is formed."

Prior to the issuance of the patent in suit, it was transferred to the Steam Gauge & Lantern Company, and by it, on March 28, 1894, assigned, together with a number of other patents, to the complainant in this case, as trustee, with authority "to recover any and all damages for or on account of any infringement of said letters patent or either of them." The complainant is a lawyer by profession in Chicago, and has never manufactured any lanterns of the construction indicated in this patent, nor have they been manufactured by any other parties. The only lantern in existence, so far as the evidence shows, is the one used as a model in the application for the patent, and another recently made by complainant's expert witness for use in this case. Outside of these two, it does not appear that the invention has ever attracted the public generally, or any one interested in the subject of lanterns. On the other hand, it may be stated that the construction of the defendant, which is also covered by a patent, has gone into immediate and extensive use among railroad men, and seems to have met with general approval as a combination of parts entirely void of the objectionable features in lanterns of any prior construction. The invention is a combination, and it is important that the radical distinction between a combination and a simple invention should be constantly remembered; for the same apparent change which, in a simple invention, would be but a substitution of equivalents, might, in a combination, introduce a new idea of means. Robinson on Patents, § 254. There is nothing new in

the combined parts in the complainant's patent. The end to be attained by the invention of the complainant is the same as that proposed by the defendants' patent. They both have invented a combination of old parts of a lantern for the purpose of securing a safe and satisfactory wick-raiser device. In railroading much inconvenience had been experienced, and at times accidents had resulted, by reason of the crude and cumbersome way railroad men were required to raise or lower their lamp wick, and it became important that they secure a mechanism which would perform this important function in the dark, in a high wind, or under any conditions whatever. The defendants' device has accomplished this.

Claim No. 1 of the complainant's patent is for a combination, the integral parts of which are: First, a lantern frame; second, a detachable bottom secured to the lantern frame by a releasable fastening; third, an oil pot permanently attached to said bottom, capable of rotating movement therein; fourth, a burner provided with a lateral projecting wick-raiser shaft; fifth, a stop arm attached to a lantern frame, adapted to come in contact with the button of the wick-raiser shaft, substantially as set forth. Every element in this combination is old. The lantern frame, of course, has been used for years; a detachable bottom secured to the lantern frame by a releasable fastening is found in the Barron patent, No. 163,136, of May 11, 1875, Miller patent, No. 162,090, of April 13, 1875, Mitchell patent, No. 394,590, of December 18, 1888, Paull patent, No. 411,676, of September 24, 1889, and a lantern offered in evidence of the make of Adams & Westlake, with utility wick raiser; an oil pot permanently attached to the bottom is found in the Adams & Westlake lantern; and the rotatory movement in the oil pot was adopted by Feeny, and is found in his patent, No. 411,218, issued September 17, 1889; the wick-raiser shaft, and a stop arm adapted to come in contact with the button of the wick-raiser shaft, are all found in the Feeny patent —so that we find that everything contained in claim No. 1 is old and heretofore known in the art.

Claim No. 2 differs, in that it states therein that the oil pot is provided with beads or projections above and below the bottom. These are also old, and found in almost every art in which metal is used. Feeny, in his patent wick-raiser attachment, employed a lantern frame with a permanently attached bottom in which the oil pot was held by spring catches. The wick-raiser device was the same as' that employed by complainant. In the Feeny patent there was the objection that the oil pot might become detached by reason of the weakening of the springs, and, the attachment being at the bottom of the pot and the wick-raiser device at the top, with nothing to steady it from a horizontal movement, the manipulation of the wick raiser at times was unsatisfactory. The first of these objections was overcome by attaching the oil pot permanently to the bottom in such a way as to be capable of a rotating movement therein, but the last two objections still continued in complainant's construction, and, in addition to that, both the Feeny and the complainant's combination of wick-raiser attachments worked in a "left-handed way." We are all

132 F.—3

aware that according to the customary and regulation standard in lanterns not fitted with a special wick-raiser attachment, the trainman, in order to raise the wick, turns his right hand to the right in taking hold of the button or pinion on the end of the wick-raiser shaft, and, conversely, to lower the wick, turns his hand to the left. In operating the Wright device the trainman would turn his oil pot to the left to raise his wick and to the right to lower it. Again, the complainant's device was objectionable for the reason that the trainman might be compelled, in the dark, to turn his oil pot all the way around before he came in contact with the wick-raising rack, and might be confused by reason of its left-hand movement. All these objections are successfully overcome by the Casey device, as the oil pot is hung from its neck in the case attached to the bottom of the lantern and steadied by a flange at the bottom. The button of the wick-raiser shaft is constantly in contact with the rack, and the trainman turns it to the right to raise his wick and to the left to lower it, in accordance with the practice in all devices used in lanterns and house lamps, with which every one is acquainted from his earliest experience.

In passing upon the question of novelty in combination patents, the advance or improvement is frequently so apparently unimportant, when put in the shape of a definition, and even when viewed in the exhibits presented in the case, that it is very difficult for the court to conclude whether it is invention or simply what would be suggested to any skilled mechanic in the art as an equivalent. The courts, therefore have taken into consideration, in determining patentability, whether or not the invention has gone into extensive use. If the public has immediately, by a general use, shown its approval, it is held by the courts as evidence of improvement involving invention, whereas, if the device has received no support from a commercial point of view, and has been rejected by those skilled in the art to which it belongs, and from the time of the issue of the patent no favorable consideration has been given to it by the public, it is held as evidence that the improvement over former devices of a similar character does not rise to the dignity of invention.

As the complainant has a patent which has not, up to the date of bringing suit, been favorably accepted, and the defendants also are patentees of a device under which they are manufacturing their lantern which is claimed to infringe that of the complainant, but which went into immediate use as soon as introduced to the public, and as the evidence is conflicting as to whether the changes made in the combination of the defendants' patent are only the equivalents of those integral parts in the complainant's patent and only colorable invasions of his invention, the fact of such immediate popular acceptance of the defendants' patent as an advance over anything theretofore known has great weight in determining that it involves invention, and therefore does not infringe the complainant's device.

Let a decree be drawn dismissing the bill, with costs.